*Decision will be entered under Rule 50.*

ESTATE OF HENRY WILLIAM HOFFERBERT, DECEASED, EUGENE FREDERICK, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 106182. Promulgated May 8, 1942.

*Eugene Frederick, Executor*, for the petitioner.
*Charles Oliphant, Esq.*, for the respondent.

#### OPINION.

ARNOLD: The Commissioner determined a deficiency in estate tax in the amount of $1,637.52. The only question involved is whether,

proceeds from insurance policies in which the wife of decedent was named beneficiary, which policies had been assigned prior to his death by decedent and wife as collateral security for a debt of decedent, are includable in decedent's gross estate. The record made consists of the pleadings, a written stipulation of facts and exhibits. The stipulation of facts, with exhibits attached, is included herein by reference.

The petitioner is the executor under the will of Henry William Hofferbert, who died November 13, 1936. The petitioner filed an estate tax return for the estate of decedent on February 16, 1938, with the collector of internal revenue for the district of Maryland.

At the time of his death the decedent was indebted to the Union Trust Co. of Maryland in the sum of $108,525, which obligation was that of the decedent alone and no other person was liable for any portion of such indebtedness.

The decedent was insured under five life insurance policies with the New York Life Insurance Co., in three of which the wife of decedent, Paula Hofferbert, was named as beneficiary, with right of revocation reserved to insured. Under the terms of each of the policies the insured had the right to change the beneficiary at any time provided the policy was not then assigned. These policies were assigned in form absolute to the Union Trust Co. of Maryland but were actually assigned as security for the debt of decedent above referred to owing by him to the trust company. The wife of decedent joined in the assignment of the policies in which she was named beneficiary. The dates when the policies were written, the dates of assignment, the beneficiaries, and the amounts due thereunder at date of death of decedent are as follows:

| Policy No. | Date written | Date assigned | Beneficiary | Amount due |
|---|---|---|---|---|
| 8,140,655-S2 | Feb. 21, 1922 | Apr. 28, 1931 | Wife | $16,922.90 |
| 8,140,656-S2 | Feb. 21, 1922 | Apr. 28, 1931 | ____do | 16,922.90 |
| 4,424,326-S1 | Jan. 9, 1913 | Oct. 13, 1931 | ____do | 4,902.04 |
| 8,140,657-S2 | Feb. 21, 1922 | May 29, 1931 | Estate of insured | 16,922.90 |
| 8,410,675-Q1 | Jan. 23, 1919 | May 29, 1931 | ____do | 15,370.11 |

The total proceeds of such policies, $71,040.85, were paid over to the Union Trust Co. of Maryland and credited on the indebtedness of the decedent above referred to.

The assets owned individually by decedent, other than insurance, as determined by respondent, were as follows:

Stocks and bonds _____ $38,940.62
Mortgages, notes and cash _____ _____ 950.00
Other miscellaneous property_____ 532.50

'Total_____ 40,423.12

The jointly owned property, as determined by respondent, amounted to $73,657.50. The total amount of indebtedness determined was $113,095.60.

The inventory and final account of the executor as filed in the probate proceedings in Orphans' Court of Baltimore City, Maryland, shows that the estate of decedent was valued at $42,338.91, including stocks of the appraised value of $40,995.84 held as collateral security and sold by the Union Trust Co. The inventory did not list the insurance or the property held jointly. From the final account of the executor it appears that the stock held by the trust company was sold at a loss of $16,389.60; that the Union Trust Co. applied to the debt of $108,525 owing to it by decedent the proceeds of $32,293.01 from two policies in which decedent's estate was named beneficiary, the proceeds of $38,747.84 from the three policies under which the wife was named beneficiary, and the proceeds of $24,606.24 from the sale of the stock, together with an amount of $12,877.91 "advanced" by the widow; and that the widow also "advanced" $890.39 to close the estate, leaving no estate for distribution.

The proceeds of each of the five policies were scheduled in the estate tax return, but the $38,747.84 total value of the three policies under which the wife was beneficiary was deducted as an amount receivable by a beneficiary other than the estate, leaving insurance included in the gross estate in the amount of $32,293.01. The estate tax return showed no net estate subject to tax.

The respondent restored the value of $38,747.84 of the three policies in which the wife was named beneficiary to the value of the gross estate, giving the following explanation:

No exemption on account of insurance receivable by beneficiaries other than the estate is allowed for the reason that the assignment of these policies to secure a loan made by the Union Trust Company of Maryland to decedent was for the benefit of the estate.

Section 302 (g) of the Revenue Act of 1926, as amended, provides that "the amount receivable by the executor as insurance under policies taken out by the decedent upon his own life" and the "excess over $40,000 of the amount receivable by all other beneficiaries as insurance under policies taken out by the decedent upon his own life" shall be included in the value of the gross estate of decedent.

The respondent contends that the proceeds of the three insurance policies in which the wife of decedent was named beneficiary are includable under the first clause of section 302 (g) as "the amount receivable by the executor as insurance under policies taken out by the decedent upon his own life." In *Estate of Silas B. Mason,* 43 B. T. A. 813 (on appeal C. C. A., 6th Cir.), the Board stated:

\* \* \* The proceeds of policies of insurance taken out by a decedent upon his own life which in terms are payable to a beneficiary other than the de-

cedent's "executor", but which are required to be used, and are in fact used, to satisfy debts of decedent or his estate, should be treated as being receivable by the decedent's "executor" within the meaning of subsection (g) and should be included in the decedent's gross estate. * * * even though decedent irrevocably assigned the policies to the beneficiary, and did not reserve to himself the power to borrow on the policies or to receive the cash surrender value thereof or "to exercise any of the incidents of ownership therein." *Mathilde B. Hooper, Administratrix, supra.* [41 B. T. A. 114.]

Herein, as in the above case, the policies involved were payable to a beneficiary other than the executor and were assigned as collateral to secure the payment of an obligation of the decedent.

The petitioner contends, however, that the facts in the *Mason* case are wholly dissimilar to the facts herein in that the beneficiary and the assignee were the same party, i. e., the divorced wife of decedent, and that the relinquishment by the wife of her dower interest as a consideration for the assignment to her of the insurance enlarged the interests which passed to other persons under decedent's will. He further contends that the policies were not assigned for the benefit of the estate; that the beneficiary under the policies was a mere surety and entitled to reimbursement by way of subrogation for any part of the jointly owned property and the insurance of which she was beneficiary applied on decedent's debt; and that insurance written for the benefit of the wife or children is by the laws of Maryland made absolutely free from the claims of the representatives of the husband or his creditors.

Sections 8 and 9, article 45,[1] Flack's Ann. Code of Maryland, provide that insurance taken out for the benefit of a wife shall inure to her benefit free from the claims of the representatives of the insured or his creditors. However, the right or interest of a wife as beneficiary under an insurance policy in which the insured reserved the right to change the beneficiary attaches only after the death of the insured, her interest as beneficiary under such a policy being a mere expectancy dependent upon the free and unlimited will and acts of the insured. *Bullen* v. *Safe Deposit & Trust Co. of Baltimore,* 177 Md. 271; 9 Atl. (2d) 581; *Rosman* v. *Travelers' Insurance Co.,*

---

[1] 8. Any married woman by herself and in her name or in the name of any third person with his assent as her trustee may insure or cause to be insured for her sole use the life of her husband for any definite period or for the term of his natural life; and any husband may cause his own life to be insured for the sole use of his wife and may also assign any policy of insurance upon his own life to his wife for her sole use; and in case of the wife surviving her husband, the sum or net amount of such insurance becoming due and payable by the terms of the insurance shall be payable to her for her own use, free from the claims of the representatives of her husband, or any of his creditors.

9. All policies of life insurance upon the life of any person which may hereafter mature, and which have been or shall be taken out for the benefit of or *bona fide* assigned to the wife or children or any relative dependent upon such person or any creditor shall be vested in such wife or children or other relative or creditor, free and clear from all claims of the creditors of such insured person.

127 Md. 689; 96 Atl. 875. During his life the insured assigned the policies involved herein to secure the payment of his debt. Although he did not change the beneficiary named in such policies, by his act of assignment he made any rights which might accrue to the named beneficiary upon his death subject to the rights of the assignee to apply any or all of the proceeds of the policies on decedent's debt, thus, under the circumstances herein, effectually cutting off the potential interest of the wife as though he had actually made a change of beneficiary. The proceeds, by virtue of the assignment, were payable upon the death of the insured to the assignee and not to the beneficiary. The fact that the right of the insured was suspended during the life of the assignment under the terms of the policies did not enlarge the interest of the beneficiary. The only interest she retained in the policies after the assignment thereof was to receive after the death of the insured any part of the proceeds not required to satisfy the claim of the trust company. No excess remained, as the entire proceeds of the policies were applied on the insured's debt.

The contention of petitioner, that the beneficiary under the three policies was a mere surety and therefore entitled to reimbursement by the estate by way of subrogation for any part of the jointly owned property and the proceeds of the three policies in which she was named beneficiary, is not supported by *Farracy* v. *Perry*, 12 S. W. (2d) 651, cited by petitioner. Although the Texas court in that case stated that a beneficiary of life policies, transferred as collateral security, on payment of a debt to protect her interest as beneficiary under the policies became subrogated to all rights of the creditor, it held that the beneficiary's right to the proceeds of the policies was subject to the rights of such creditor. In that case Perry, the beneficiary's husband, individually, and a partnership of which he was a member were indebted to a bank in the amounts of $5,467.37 and $18,317.60, respectively, or a total of $23,784.97. Partnership property was assigned to the bank as collateral and Perry also assigned as collateral property of his own, together with two policies on his life under which his wife was beneficiary, with right of revocation. After the death of Perry $20,923 was due on the policies. The wife with borrowed funds paid $23,784.97 to the bank which assigned to her the notes and obligations of the partnership and all collateral held by it together with the two policies. The partnership was adjudged bankrupt after the death of Perry and the trustee in bankruptcy brought suit against the widow of Perry and the bank to recover possession of the collateral given to the bank by the partnership. The court denied the trustee in bankruptcy any relief, holding that the "policies" occupied the position of a surety for the payment

of the partnership debt, which had been incurred prior to the transfer of the policies as collateral and that therefore the beneficiary had the right to require the partnership collateral to be applied to the $18,317 partnership debt before any part of the proceeds of the policies were so applied. Herein the collateral consisted of some stocks belonging to decedent, two insurance policies payable to decedent's estate, and three insurance policies payable to decedent's wife. In addition, according to the statement of petitioner's counsel, jointly owned property of a value of $73,657.50, as determined by respondent, was held as collateral by the trust company to obtain the release, of which the widow advanced $12,877.91. Applying the doctrine of the *Farracy* case, *supra*, although the facts are different, the widow of decedent herein had the right at most to have the collateral belonging to decedent and the proceeds from the policies payable to the estate first applied to the debt before resorting to the proceeds of the policies payable to her. This was done. We know of no authority and none has been called to our attention which holds that a beneficiary of a policy with power of revocation assigned by the insured during his life as security for the payment of his debts may recover from his estate the entire proceeds or so much as were applied to the payment of his debts. The *Farracy* case does not so hold.

In *Commissioner* v. *Jones*, 62 Fed. (2d) 496, cited by petitioner, it was held that the amount "receivable by the executor" under section 302 of the Revenue Act of 1924 means only such insurance as comes to his hands for distribution as a part of the assets of the estate subject to the claims and charges that such assets are ordinarily subjected to in the administration of an estate. In that case the insurance, although collectible by the executor of the estate, was payable to decedent's widow or children free from the claims against his estate. Herein the proceeds of the policies were expressly made by the decedent subject to his indebtedness.

Under the rule of the *Mason* case, *supra*, insurance proceeds which, although payable to a beneficiary other than the estate, are required to to be used and are used to satisfy debts of the decedent or his estate, are to be treated for the purposes of the Federal estate tax "as receivable by the executor" and are includable in the value of decedent's gross estate. That case is controlling herein. See also *Estate of Waldo Rohnert*, 40 B. T. A. 1319, and *Pacific National Bank of Seattle, Executor*, 40 B. T. A. 128. The action of the respondent in including in the value of the gross estate of decedent the proceeds of $38,747.84 from the policies herein involved is, therefore, approved.

*Decision will be entered for the respondent.*